# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TONYA LEE CONNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:11-cv-00145 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on January 17, 2008,[1] alleging that she had been disabled since January 1, 2006, due to diabetes, learning disability, neuropathy, asthma, depression, and restless leg syndrome. *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 138, 248. Plaintiff's application was denied both initially (TR 61) and upon reconsideration (TR 62). Plaintiff subsequently requested (TR 83-86) and received (TR 30-53) a hearing. Plaintiff's hearing was conducted on April 14, 2010, by Administrative Law Judge ("ALJ") James W. Lessis. *Id.* Plaintiff and Vocational Expert, Calvin J. Turner, appeared and testified. *Id.*

On April 29, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.[2] TR 11-29. Specifically, the ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since January 17, 2008, the application date (20 CFR 416.971 *et seq.*)

2. The claimant has a severe combination of impairments including: type 2 diabetes mellitus, peripheral neuropathy, hypertension, back disorder, bilateral knee injury repair, obesity, asthma, and major depressive disorder. (20 CFR 416.920(c)). All impairments have been considered under

---

[1] Plaintiff's application lists a filing date of February 6, 2008 (TR 138), but the Disability Determination and Transmittal form notes a filing date of January 17, 2008 (TR 61), which is the date used by the ALJ. TR 14. This discrepancy is, however, immaterial to the issues before the Court.

[2] In his decision, the ALJ also noted that Plaintiff had filed prior applications for Title XVI payments on May 5, 1986; March 28, 2005; April 12, 2006; and March 9, 2007. Those applications were each denied initially, and Plaintiff declined to appeal, thus abandoning the claims. The ALJ hearing the instant application found no valid ground on which to reopen any of the prior applications, and declined to do so in his decision. TR 14.

2

the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to maintain employment at the level of lifting and carrying a maximum of 10 pounds; standing and walking 2 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; negligible climbing, balancing, stooping, kneeling, crouching, and crawling; negligible use of foot controls; frequent reaching, handling, fingering, and feeling; and negligible exposure to extreme temperatures, vibrations, moving mechanical parts, electrical shock, hazardous exposed places, radiation, explosives, fumes, odors, dust, gases, and poor ventilation. The claimant is further limited by the need for a hand held assistive device. From a mental standpoint, the claimant retains the reasoning, mathematics and language skills to perform simple work with understanding and carrying out simple one- or two-step instructions, dealing with standardized situations with occasional or no variables in situations encountered on the job, performing basic arithmetic operations, and reading, writing, and speaking in simple sentences using normal work order. Furthermore, the claimant is limited to minimal contact with the public, co-workers, and supervisors. 20 CFR 416.967(a).

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 29, 1967 and was 40 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that

3

      the claimant is "not disabled," whether or not the claimant
      has transferable job skills (See SSR 82-41 and 20 CFR Part
      404, Subpart P, Appendix 2).

  9.  Considering the claimant's age, education, work
     experience, and residual functional capacity, there are jobs
     that exist in significant numbers in the national economy
     that the claimant can perform (20 CFR 416.969 and
     416.969(a)).

  10.  The claimant has not been under a disability, as defined in
     the Social Security Act, since January 17, 2008, the date
     the application was filed (20 CFR 416.920(g)).

TR 16-23 (underlining in original).

On June 28, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 6-10. On December 16, 2010, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to

4

support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (citing *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by

5

proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

> ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) failing to consider Dr. Jason Pack's assessment, and 2) according more weight to the opinions of consultative examiners Dr. Albert

7

Gomez and Dr. Bruce Davis than to the opinion of Dr. Perry Damian, Plaintiff's treating physician. Docket No. 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Dr. Pack's Assessment**

Plaintiff asserts that the ALJ failed to consider the June 7, 2005 examination performed by Dr. Jason Pack, which she contends supports the opinion at issue of her treating physician Dr. Perry Damian. Docket No. 13, referencing TR 313-20. Defendant argues that Dr. Pack's 2005 examination findings are irrelevant to the instant disability determination because they were part of the record in one of Plaintiff's previous disability applications in which a final determination of "not disabled" was reached. Docket No. 16, p. 6-7. Defendant maintains that the ALJ's decision not to consider Dr. Pack's June 7, 2005 examination was proper, because review of that

8

examination was precluded by res judicata. *Id.*

As has been noted above, Plaintiff has filed four previous disability applications, each of which was denied initially, uncontested, and abandoned. TR 14. Final administrative decisions are binding, and uncontested prior disability determinations preclude a finding of disability within a previously adjudicated period. *Casey v. Secretary*, 987 F.2d 1230, 1232-33 (6th Cir. 1993). Administrative res judicata not only prevents a claimant from establishing disability prior to the date of a final decision denying an earlier application, but also requires a claimant to show a worsened condition in order to establish disability at a later date. *Id.*

Plaintiff filed her most recent abandoned application on March 9, 2007, and it was denied initially on August 1, 2007 (TR 60); therefore, it is the final decision of the Commissioner that Plaintiff was not disabled as of August 1, 2007 (or before). *See* 20 CFR 404.955 (explaining that earlier decisions of the Secretary that were not appealed are final and binding). The ALJ in the case at bar did not find any valid ground for reopening her prior applications. TR 14.

Plaintiff has the burden to prove by clear and convincing evidence that her condition worsened to such an extent that she became disabled after August 1, 2007. *See Casey*, 987 F.2d at 1232-33. Because the Commissioner found Plaintiff was not disabled prior to 2007, Dr. Pack's 2005 examination does not provide evidence of a disability.

Plaintiff nevertheless contends that the ALJ should have considered Dr. Pack's assessment, because it supports the restricted findings of her treating physician, Dr. Damian. Docket No. 13. For the reasons to be discussed below, however, the ALJ found that Dr. Damian's opinion was too restrictive and was inconsistent with the overall evidence of record. The ALJ was not obligated to consider or discuss Dr. Pack's opinion because it was precluded by res judicata. Plaintiff's claim fails.

9

## 2. Weight Accorded to Dr. Damian

Plaintiff maintains that the ALJ erred by according greater weight to the opinions of consultative examiners Dr. Albert Gomez and Dr. Bruce Davis than to Dr. Perry Damian, Plaintiff's treating physician. Docket No.13 at 3-7. Plaintiff correctly notes that the opinions of treating physicians are typically afforded greater deference because of the treating relationship. *Id.* Plaintiff argues that the ALJ should have therefore accorded Dr. Damian's opinion greater weight. *Id.* Plaintiff cites various medical records and tests to support Dr. Damian's findings, and notes that because the consultative examiners' opinions did not address all of Plaintiff's medical problems, the ALJ erred in relying on their opinions. *Id.* Plaintiff also correctly notes that the ALJ must articulate justifiable reasons for discounting a treating physician's opinion, and argues that the ALJ in the case at bar failed to do so. *Id.*

Defendant responds that the ALJ properly considered and weighed the opinion evidence of record. Docket No. 16 at 7-14. Defendant also notes that the residual functional capacity assigned to Plaintiff by the ALJ is actually *more* restrictive than that in the consultative examiners' opinions, which demonstrates that the ALJ heightened Plaintiff's restrictions based on Dr. Damian's opinion. *Id.* Defendant contends that the ALJ's determination was supported by substantial evidence and was proper. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion

of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR 416.927(d) (emphasis added). *See also* 20 CFR 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR 404.1502.

11

In making his RFC determination, the ALJ specifically discussed Dr. Damian's medical source statement, and determined that it was inconsistent with the medical evidence of record. *See* TR 21. The ALJ stated:

> The undersigned has also considered the form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical) dated August 4, 2010. In this form, it was noted that the claimant could lift less than 10 pounds. She would immediately require a hand held assistive device for ambulation. She would need the opportunity to alternate sitting and standing to relieve pain or discomfort. She could occasionally reach, handle, finger, and feel. This opinion was not given controlling weight because it is inconsistent with the residual functional capacity stated above. It is also inconsistent with the medical evidence as a whole which shows a higher level of functioning.

*Id.*

Dr. Damian was Plaintiff's treating physician, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions. As has been noted, however, the ALJ found that Dr. Damian's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR 416.927(d)(2) and 20 CFR 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* As such, the Regulations do not mandate that the ALJ accord Dr. Damian's evaluation controlling weight.

For the reasons discussed below, the ALJ decided to rely on other, consistent evidence within the record. This decision is within the ALJ's province.

On June 26, 2007, Dr. Gomez performed a consultative examination of Plaintiff, and ultimately concluded that Plaintiff was not disabled. TR 492-96. Regarding this examination,

12

Case 3:11-cv-00145   Document 17   Filed 01/30/13   Page 12 of 17 PageID #: 987

the ALJ stated:

> On June 26, 2007, the claimant presented to Albert Gomez, M.D., with a chief complaint of type 2 diabetes mellitus for the past 3 years. She denied diabetic retinopathy or any history of stasis ulcers but complained of chronic pain and numbness in her hands and feet due to her diabetes. She also complained of chronic shortness of breath, wheezing, and dry cough. Upon physical examination, Dr. Gomez noted the claimant was obese and in no acute distress. She had a normal gait and was able to get on and off the examination table with moderate difficulty. An examination of her extremities revealed no evidence of cyanosis, clonus, or edema. The claimant had full range of motion in the shoulders, elbows, and wrists all without tenderness to palpation. Fine finger movements were normal. Handgrip was good bilaterally and motor strength was 5/5 in the upper and lower extremities. Deep tendon reflexes were noted to be 1+ bilaterally in the upper and lower extremities. Straight leg raising test was negative in the lying and sitting position. Dr. Gomez diagnosed the claimant with type 2 diabetes mellitus and asthma. (Exhibit 16F)

TR 19.

After discussing the other evidence of record, the noted the inconsistency between Plaintiff's allegations and the objective evidence of record. TR 20. In so doing, the ALJ specifically referenced the findings of Dr. Gomez, articulated above:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The finding of diminished credibility is supported by inconsistencies between the claimant's allegations and the paucity of objective medical evidence. Specifically, the claimant has been diagnosed with diabetes mellitus. She reports symptoms of neuropathy including pain and numbness in her legs. She also complains of back pain. However, upon physical examination, it was noted that she had a normal gait and was able to get on and off the examination table with moderate difficulty. An examination of the claimant's extremities revealed no evidence of cyanosis, clonus, or edema. She had full range of motion in her

13

> shoulders, elbow, and wrists all without tenderness to palpation. Fine finger movements were normal. Handgrip was good bilaterally and motor strength was 5/5 in the upper and lower extremities. Deep tendon reflexes were 1+ bilaterally in the upper and lower extremities. Straight leg raising test was negative in the lying and sitting position. (Exhibit 16F).

TR 20.

As can be seen, the ALJ found Plaintiff's alleged limitations were inconsistent with Dr. Gomez's opinion and did not support a finding that Plaintiff is disabled.

Additionally, the ALJ's decision that Plaintiff is "not disabled" is also supported by Plaintiff's activities of daily living ("ADL"). On May 5, 2008, Dorothy Lambert, Ph.D., conducted a psychological evaluation of Plaintiff, in which Plaintiff reported going to the store by herself, doing her own cooking and laundry, doing housework with her children's help, playing cards and games with her children for fun and relaxation, watching television, listening to the radio, reading historical romance novels, going to church, and sometimes visiting the neighbors. TR 20, 684. Dr. Lambert noted as follows:

> In a typical day, Ms. Conner gets up around 6:00 a.m. She gets the children ready for school and they catch their school buses at 6:45 and 7:30. Then she makes the beds, feeds and waters the dogs, prepares and eats breakfast and sometimes listens to the radio. Sometimes she visits her boyfriend's mother who lives in the neighborhood and helps take care of her, as the lady is very ill. She has lunch between 12:00 and 12:30. In the afternoon, she listens to the radio and watches television. Her daughter comes home around 2:30 and the claimant tries to help her with her homework. Her son comes home around 3:45 and she also helps him with his homework. She cooks dinner and eats around 6:00 p.m. In the evening she washes dishes, reads the Bible to the children and helps them finish their homework. Then she plays Monopoly or other games with them. She goes to bed around 9:00. The claimant reports about two good days a week when she is not in pain.

TR 685.

14

Plaintiff's reported daily activities reveal a "higher level of functioning" than Dr. Damian's restrictive limitations, are consistent with the ALJ's determination, and support the ALJ's finding.

Dr. Davis performed his consultative examination of Plaintiff on April 10, 2008, and the ALJ likewise found his opinion to be consistent with the overall evidence of record. TR 20. Regarding Dr. Davis' evaluation, ALJ stated:

> [A] physical examination performed by Dr. Davis on April 10, 2008 showed the claimant was in no acute distress. However, she was overweight with no obvious deformities. The claimant had full motion and good strength in the neck. She had good hand grip. It was Dr. Davis' opinion that the claimant could lift 10 to 20 pounds occasionally and 10 pounds frequently. She could stand and walk about 4 hours during an 8-hour workday and sit 8 hours during an 8-hour workday. (Exhibit 29 F).
>
> . . .
>
> As for the opinion evidence, the undersigned has considered the opinion of Dr. Davis who opined the claimant could occasionally lift 10 to 20 pounds; stand and walk 4 hours during an 8-hour workday; and sit about 8 hours during an 8 hour workday. (Exhibit 29F). Dr. Davis' opinion was accorded substantial weight because it is consistent with the medical evidence.

TR 20-21.

As stated by the ALJ, Dr. Davis's opinion is consistent with the medical evidence discussed above as well as the non-examining State Agency physicians' opinions. TR 21 (according "some" weight to the non-examining physicians' because they did not examine or treat Plaintiff and their conclusions are supported by a number of other sources discussed in the opinion). After considering all of the medical and testimonial evidence of record, the ALJ, in fact, further reduced Dr. Davis's opinion to reflect that Plaintiff could perform a range of sedentary work with certain restrictions. TR 18, 20. *Compare* TR 676-79 (finding that Plaintiff

15

could lift/carry 10-20 pounds occasionally and 10 pounds frequently, stand/walk 4 hours in an 8-hour workday, sit 8 hours in an 8-hour workday, must limit bending and squatting, must limit heat/humidity and climbing/heights) *with* TR 18 (finding that Plaintiff could lift/carry 10 pounds maximum; stand/walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; perform negligible climbing, balancing, stooping, kneeling, crouching, and crawling; is limited by need for assistive device . . .).

Although Plaintiff proffers several sources as support for her contention that the evidence of record supports Dr. Damian's findings, only her February 2008 visit with Dr. Penn, September 2009 x-ray at Diagnostic Health, and select records from the Family Healthcare Group fall within the relevant time period for this determination.[4] As has been demonstrated, however, the ALJ considered the record as a whole and determined that Dr. Damian's opinion was inconsistent with the overall record. When there is contradictory evidence, the treating source's opinion is weighted against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *See* 20 CFR 416.927(d)(2), 404.1527(d)(2), and 416.927(e)(2). The Regulations specifically note that the more consistent an opinion is with the record *as a whole*, the more

---

[4] Specifically, Plaintiff, in her Brief, states:

> The record by her treating physicians including Dr. Damian at Family Health Care Group substantially evidences their treatment of her for the reasons stated in Dr. Damian's assessment. . . .
> . . . In February 2008, she was treated by Dr. Milton Penn at Dependable Foot Care and was diagnosed with onychodystrophy, difficulty walking/pain in foot/toes and NIDDM/neuropathy. . . . In September 2009, x-rays of the foot was performed by Diagnostic Health and the impression was degenerative spur of the calcaneus.

Docket No. 13, p. 5.

weight it will be given. 20 CFR 416.927(d)(4).

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key*, 109 F.3d at 273). Because there is substantial evidence in the record to support the weight accorded to each physician's opinion, the ALJ's decision must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge